**NEXANS WIRES S.A. and Lacroix & Kress GMBH, Plaintiff–Appellant,**

v.

**SARK–USA, INC. and Sarkuysan Elektrolitik Bakir Sanayii Ve Ticaret, A.S., Defendants–Appellees.**

No. 05–3820–CV.

United States Court of Appeals, Second Circuit.

Feb. 13, 2006.

Plaintiff-appellant Lacroix & Kress GMBH[2] (L & K) sues defendants-appellees Sark–USA, Inc. and Sarkuysan Elektrolitik Bakir Sanayii Ve Ticaret, A.S. (Sarkuysan) under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, and under the laws of New York and North Carolina,[3] alleging that defendants misappropriated certain of L & K's trade secrets and data, and that defendants committed acts of unfair competition against L & K. L & K claims, *inter alia*, that two employees of AEB International, Inc. (AEB), and its sister company Atlantic Specialty Wire, Inc. (ASW), misappropriated L & K's "confidential proprietary information" from AEB and ASW computers, resigned from AEB and ASW, and, with Sarkuysan, created Sark–USA, an L & K competitor, using the misappropriated information to their advantage. *See Nexans Wires S.A. v. Sark–USA, Inc.*, 319 F.Supp.2d 468, 471 (S.D.N.Y.2004). L & K now appeals from an award of summary judgment in favor of Sark–USA and Sarkuysan on its federal law claim, as well as the judgment after trial in favor of Sarkuysan on its state law claims.[4] We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

1. *Summary Judgment*

The CFAA penalizes, *inter alia*, unau-

Michael R. Gordon, Kirkpatrick & Lockhart Nicholson & Graham LLP, New York, New York, for Appellants.

Adam C. Silverstein (S. Preston Ricardo, Sydney R. Smith, on the brief), Golenbock Eiseman Assor Bell & Peskoe LLP, New York, New York, for Appellees.

PRESENT: Honorable REENA RAGGI, Honorable PETER W. HALL, Circuit Judges, and Honorable EDWARD R. KORMAN,[1] Chief Judge.

---

1. The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

2. Nexans Wires S.A. withdrew as a plaintiff in this action during the trial.

3. L & K also initially invoked South Carolina law, but ultimately elected not to submit its claim under that states's law to the trial jury.

4. At trial, the District Court dismissed the case against Sark–USA, and L & K does not challenge that dismissal on appeal.

thorized access to protected computers[5] with intent to defraud or cause damage. 18 U.S.C. § 1030(a). The statute's civil enforcement provision allows "[a]ny person who suffers damage or loss" from conduct prohibited by the statute to bring an action under its terms, but only if the plaintiff can satisfy one of five factors. 18 U.S.C. § 1030(g); *see P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504 (3d Cir.2005). The factor relevant to L & K's claim is whether defendants' conduct caused "loss to 1 or more persons during any 1–year period ... aggregating at least $5,000 in value." *Id.* § 1030(a)(5)(B)(I). The CFAA defines "loss" as

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage[6] assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service....

18 U.S.C. § 1030(e)(11) (footnote added). L & K submits that the district court erred in concluding that, as a matter of law, L & K had failed to adduce sufficient evidence of the requisite $5000 loss to defeat defendants' motion for summary judgment. *See Nexans Wires S.A. v. Sark–USA, Inc.*, 319 F.Supp.2d at 468. We review a district court's grant of summary judgment *de novo*, viewing all facts in the light most favorable to the nonmoving party. *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 41 (2d Cir. 2005). In this case, we conclude that, on the CFAA claim, summary judgment was correctly granted in favor of defendants substantially for the reasons stated by the district court in its thoughtful opinion. *See Nexans Wires S.A. v. Sark–USA, Inc.*, 319 F.Supp.2d 468.

a. *Lost Revenue*

■ L & K claims that defendants' misappropriation of its confidential data caused it to lose "profits of at least $10 million." The CFAA defines recoverable loss as "any reasonable cost to any victim, ... and any revenue lost ... because of interruption of service." 18 U.S.C. § 1030(e)(11). As the district court correctly recognized, the plain language of the statute treats lost revenue as a different concept from incurred costs, and permits recovery of the former only where connected to an "interruption in service." *See Nexans Wires S.A. v. Sark–USA, Inc.*, 319 F.Supp.2d at 477; *see also Civic Ctr. Motors, Ltd. v. Mason Street Import Cars, Ltd.*, 387 F.Supp.2d 378, 382 (S.D.N.Y. 2005) (citing the district court in *Nexans*, and ruling that loss of "competitive edge" claim not caused by computer impairment or computer damage was not cognizable under the CFAA); *Resdev, LLC v. Lot Builders Ass'n*, No. 04–Civ–1374, 2005 WL 1924743, at *5, 2005 U.S. Dist. LEXIS 19099, at *10–12 (M.D.Fla. Aug. 10, 2005) (similar); *see generally Register.com, Inc. v. Verio, Inc.*, 126 F.Supp.2d 238, 252 n. 12 (S.D.N.Y.2000) ("Although lost good will or business could provide the loss figure required ..., it could only do so if it resulted from the impairment or unavailability of data or systems.") (construing earlier version of current statute). Because it is undisputed that no interruption of service occurred in this case, L & K's asserted

---

**5.** A "protected computer" is one used by a financial institution or by the United States Government, or one which is used in interstate or foreign commerce or communication. 18 U.S.C. § 1030(e)(2).

**6.** "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8).

loss of $10 million is not a cognizable loss under the CFAA.

### b. *Travel Expenses*

■ L & K argues that it nevertheless satisfies the statute's $5000 loss requirement because it spent approximately $8000 to send its executives from Germany to New York to investigate the misappropriations of its stored data. L & K asserts that these expenses fall within the CFAA's definition of loss as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense. . . ." 18 U.S.C. § 1030(e)(11). The district court disagreed. After a thorough and detailed analysis, it concluded that this statutory language consistently has been construed to refer to costs associated with "investigating and remedying damage to a computer, or a cost incurred because the computer's service was interrupted," not costs incurred investigating business losses unrelated to actual computers or computer services. *Nexans Wires, S.A. v. Sark–U.S.A., Inc.*, 319 F.Supp.2d at 475–76.

We need not here decide whether the costs of business damage assessments relating to data stolen in the course of a CFAA violation can ever qualify as cognizable losses under the statute. In this case, L & K has failed to show any connection between the travel costs incurred by its executives in visiting New York City and "any type of computer investigation or repair," or any preventative security measures or inspections. *Id.* at 476–77. Rather, the record indicates that the sole focus of the New York meetings was the business loss associated with the misappropriation. No court has construed the CFAA's loss definition to extend that far. *See id.* at 477–78. Accordingly, the grant of summary judgment is affirmed.

### 2. *Judgment After Trial*

After the district court dismissed L & K's CFAA claims, it exercised supplemental jurisdiction to proceed to trial on the remaining state law misappropriation and unfair competition claims. *See id.* at 478. Having failed to secure a jury verdict in its favor, L & K argues that several charging errors require a retrial.

### a. *Locus of Injury: New York and North Carolina*

L & K claims that the district court improperly charged the jury that under New York misappropriation law, plaintiff had to prove that L & K sustained injury in New York. L & K claims also that the district court erred in charging that, on the same tort theory under North Carolina law, plaintiff had to prove that actual misconduct occurred in that state. Preliminarily, we note that the district court gave these instructions only after several lengthy discussions with trial counsel and after requesting further submissions from the parties, particularly with respect to New York law, which were never forthcoming.

■ No matter. We need not decide the merits of L & K's New York law challenges to the charge because the asserted error is, in any event, harmless. *See United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The record establishes that L & K repeatedly claimed that the only site of injury was in New York. Prior to the charging conference, plaintiff's counsel stated: "That is where the injury—the injury occurred to—for us, the injury occurred in New York because here is where we lost our sales." Trial Tr. at 909; *see also id.* at 916 (same assertion in response to Rule 50

motion). L & K continued to press the point in closing argument. *See id.* at 1053 ("L & K is a German company. But where does L & K sell? Only one place. New York, to AEB. And where did the harm occur? In New York. Where the sales were lost."). Defendants never contended otherwise. Thus, the jury verdict against L & K is fairly understood to find that L & K failed to prove *any* injury as a result of the misappropriation, not simply that it failed to prove that the site of its injury was New York. So understood, the alleged charging error caused no harm. *See Innomed Labs, LLC v. ALZA Corp.,* 368 F.3d 148, 164 (2d Cir.2004).

■ We review the North Carolina misappropriation instruction for fundamental error, because L & K did not object to it before or during the charging conference. *See SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d 329, 343 (2d Cir.2004) ("Fundamental error is a more exacting standard than the plain error standard in the criminal context and must be so serious and flagrant that it goes to the very integrity of the trial.") (internal quotation marks omitted). L & K fails to establish error, much less one so fundamental as to call into question the integrity of the trial. *See id.* North Carolina courts have held that its misappropriation laws may reach extra-territorially only when "justified by local concerns ... [and when there is] a sufficient state interest in the litigation such that application of North Carolina's law is 'neither arbitrary or unfair.'" *The 'In' Porters, S.A. v. Hanes Printables, Inc.,* 663 F.Supp. 494, 501 (M.D.N.C.) (holding that an in-state injury to plaintiff is necessary to justify a North Carolina unfair competition claim against a foreign defendant) (quoting *American Rockwool, Inc. v. Owens–Corning Fiberglas Corp.,* 640 F.Supp. 1411, 1427 (E.D.N.C.1986)). In light of this principle, the district court did not commit fundamental error in instructing the jury that it had to find that some misconduct had occurred in North Carolina.

b. *Proposed Language in North Carolina Trade Secret Claim Instruction*

■ L & K claims that the district court committed a further charging error by shifting the burden of proof on its North Carolina trade secret misappropriation claim from defendant to plaintiff. Because L & K objected to this instruction at trial, we review the challenged instruction *de novo* in light of the charge as a whole. *See United States v. Carr,* 424 F.3d 213, 218 (2d Cir.2005).

The North Carolina trade secret law penalizes "misappropriation" of trade secrets, and defines "misappropriation" as "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66–151(1). The statute defining the burden of proof for misappropriation claims prescribes that "prima facie" proof of misappropriation can be established by "the introduction of substantial evidence that the person against whom relief is sought both: (1) Knows or should have known of the trade secret, and (2) Has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." *Id.* § 66–155. The statute further provides that this prima facie evidence may be rebutted by the defendant's introduction of evidence that the information was acquired independently. *Id.*

The district court had initially proposed a charge, taken from the North Carolina pattern jury instructions, that tracked the language of this burden-of-proof statute. Defendant objected, arguing that such a charge would permit the jury to hold it liable for misappropriation simply on a finding of opportunity to misappropriate even if no misappropriation actually had occurred. Because L & K was unable to cite any North Carolina case upholding a misappropriation claim in the absence of actual misappropriation, the district court modified its instruction and charged the jury as follows:

> L & K must prove by a preponderance of the credible evidence that Sarkuysan misappropriated in North Carolina, the process by which L & K manufactures silver plated copper wire. Under North Carolina law, misappropriation means the acquisition of another person's trade secret without that person's express or implied consent, unless the secret is arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret. A person may be liable for trade secret misappropriation if that person knew or should have known of the trade secret, and acquired or used it without the express or implied consent or authority of the owner.

Reading the charge as a whole, the district court's instructions were not erroneous, but a reasonable resolution of any ambiguities in the state law. Burden-shifting principles are often helpful to courts in deciding whether there are material questions of fact warranting trial. But they should not be permitted to confuse a jury as to a plaintiff's ultimate burden of proof. *See Sharkey v. Lasmo (AUL Ltd.),* 214 F.3d 371, 374 (2d Cir.2000) (noting that instructing the jury on the "complex process" of burden-shifting "produces no benefit and runs the unnecessary risk of con-fusing the jury"); *cf. Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding in employment discrimination case that "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to rebut the [defendant's] explanation, no rational factfinder could conclude that the action [succeeds]"); *see also Cross v. N.Y. City Transit Auth.,* 417 F.3d 241, 249 (2d Cir.2005) (same). In this case, even if L & K had satisfied its prima facie burden of proving Sarkuysan's opportunity for misappropriation, it still bore the burden of convincing the jury that defendant had engaged in conduct fitting the statutory definition of misappropriation. Because it could not do so absent evidence of acquisition or use, the district court's instruction on North Carolina law was not erroneous.

### c. *Verdict Form*

 Finally, L & K claims that one of the special verdict questions submitted to jurors on L & K's North Carolina unfair trade practices claim incorrectly framed the issue and was unnecessarily confusing. *See Vichare v. AMBAC Inc.,* 106 F.3d 457, 465 (2d Cir.1996). Because L & K did not object to the challenged question at the charging conference however, it must demonstrate that the charged error is fundamental to the integrity of the trial. *See SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d at 343. That is not this case.

The challenged instruction was designed to aid the district court in determining whether the acts found by the jury constituted unfair competition, as required by North Carolina law. *See* N.C. Gen.Stat. § 75–1.1; *United Labs., Inc. v. Kuykendall,* 335 N.C. 183, 187 n. 2, 437 S.E.2d 374, 377 n. 2 (1993). The instruction was not misleading; indeed, the jury did not submit any note seeking clarification. Moreover, because the jury concluded that

Sarkuysan's conduct had not substantially affected business activity in North Carolina, L & K could not have succeeded on its unfair competition claim in any event, rendering any error associated with the unfair competition verdict sheet harmless. *See In re Parmalat Sec. Litig.,* 383 F.Supp.2d 587, 603–04 (S.D.N.Y.2005) (citing cases, and noting that "the overwhelming majority" of North Carolina federal courts to consider the issue have required proof of substantial effect on plaintiff's in-state business activity to sustain unfair competition claim).

The district court's award of summary judgment in favor of defendants Sark–USA and Sarkuysan, entered on May 28, 2004, and the posttrial judgment in favor of Sarkuysan, entered on June 10, 2005, are hereby AFFIRMED.