**TRACFONE WIRELESS, INC., Plaintiff,**

v.

**Dustin L. ADAMS, Defendant.**

**Case No. 14–cv–24680–TURNOFF.**

United States District Court, S.D. Florida.

Signed April 9, 2015.

See also 304 F.R.D. 672.

James Blaker Baldinger, Carlton Fields PA, West Palm Beach, FL, Aaron Stenzler Weiss, Carlton Fields Jorden Burt, P.A., Miami, FL, for Plaintiff.

---

1. According to his declaration, Mr. Wehling is employed as TracFone's Fraud Investigations

CONSENT

WILLIAM C. TURNOFF, United States Magistrate Judge.

### ORDER GRANTING TRACFONE'S MOTION FOR ENTRY OF FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT DUSTIN L. ADAMS

**THIS MATTER** is before the Court on Plaintiff TracFone Wireless, Inc.'s ("TracFone") Agreed Motion for Entry of Final Judgment and Permanent Injunction Against Defendant Dustin L. Adams. (ECF No. 20). Upon review of the motion, the supporting record, and the applicable law, the motion is **GRANTED.**

#### INTRODUCTION

In its motion, TracFone seeks entry of final judgment in the amount of $79,795.93 against Adams and the entry of a permanent injunction prohibiting Adams from engaging in the type of conduct that prompted TracFone to file this action. In support of its motion, TracFone relies on the First Declaration of Kevin Wehling[1] (the "First Wehling Declaration") (ECF No. 4–1); the Second Declaration of Kevin Wehling (the "Second Wehling Declaration") (ECF No. 19–1); and two declarations of TracFone customers who claim they were defrauded by Defendant Adams: the Declaration of Shelia Burgess (the "Burgess Declaration") (ECF No. 4–2), and the Declaration of Brian Williams (the "Williams Declaration") (ECF No. 4–3). Adams has not challenged any of the factual assertions set forth in those declarations. In fact, in addition to those declarations, TracFone also relies on a declaration signed by Adams himself (the "Adams Declaration"). (ECF No. 19–2).

Manager.

The Court finds that the facts set forth in the several declarations upon which TracFone relies in support of its motion, are credible. The declarations are consistent with each other. Moreover, Adams' own declaration is particularly compelling as he generally admits to engaging in the scheme that TracFone has accused him of perpetrating. Accordingly, as set forth below, the Court makes several findings of fact based upon the declarations.

### FINDINGS OF FACT

The Court finds that TracFone has established that it sells its products under several different trademarked brands, including Straight Talk, TracFone, and under TracFone's trademarked

("spiracle logo"). First Wehling Declaration at ¶¶ 16–17. The Court further finds that TracFone has established that it recoups the subsidy it provides for the telephones it sells at reduced prices through profits earned on the sale of its prepaid airtime, which customers must purchase and subsequently load onto the phone in order to make or receive calls on the TracFone network. *Id.* at 19.

The Court further finds that TracFone has established that Adams perpetrated a scheme by which he unlawfully acquired TracFone airtime for himself and for others, for his own profit (the "Social Engineering Scheme" or "Scheme"). Adams Declaration at ¶ 6. The Court finds that TracFone has established that, as part of his Scheme, Adams advertised and sold TracFone airtime. *Id.* The Court finds that TracFone has established that Adams marketed his fraudulent airtime through word of mouth outside retail stores that sold legitimate TracFone products. First Wehling Declaration at ¶ 15. The Court further finds that TracFone has estab-

lished that Adams also advertised his steeply discounted airtime through his personal Facebook profile. *Id.* The Court further finds that TracFone has established that Adams' customers believed that he was affiliated with TracFone or was otherwise authorized to sell its products. The Court also finds that TracFone has established that Adams' customers further believed that he was selling legitimate TracFone airtime. *See* Adams Declaration at ¶ 8; *see also* Burgess Declaration at ¶ 2; *see also* Williams Declaration at ¶ 2. Further, the Court finds that TracFone has established that Adams sold, and his customers purchased, TracFone airtime at a substantially discounted price. Adams Declaration at ¶¶ 6, 7; Burgess Declaration at ¶ 3; Williams Declaration at ¶¶ 2, 5.

The Court finds that TracFone has established that, once the customer purchased airtime from Adams, he would note the phone number at which the customer wished to apply to the airtime. Adams Declaration at ¶ 9. The Court further finds that TracFone has established that Adams then called into TracFone customer service call centers and impersonated a TracFone technical support agent. *Id.* at ¶ 10. The Court also finds that TracFone has established that Adams used an employee identification number that belong to an actual TracFone employee in order to dupe the customer service agents into believing that he was a legitimate TracFone representative. *Id.* Additionally, the Court finds that TracFone has established that, once he engineered his way past TracFone's authentication process, Adams proceeded to coerce the customer service representatives into applying airtime to the previously arranged TracFone telephone number for free. *Id.* at ¶¶ 9–10.

The Court further finds that TracFone has established that Adams' Scheme required a sophisticated knowledge of

TracFone's internal and proprietary systems. In addition, the Court finds that TracFone has established that Adams developed his intimate knowledge of TracFone's internal workings through repeated calls to TracFone customer service call centers. *Id.* at ¶ 12. The Court also finds that TracFone has established that Adams used this knowledge to access TracFone's internal systems by walking TracFone's customer service representatives through a step-by-step process. *See id.* at ¶ 12. Moreover, the Court finds that TracFone has established that Adams convinced the customer service representatives that he was a technical support agent calling from TracFone's corporate office in Miami, Florida, and that his system was malfunctioning. *Id.* at ¶ 11. Further, the Court finds that TracFone has established that Adams would then ask the customer service representative to add the airtime minutes to a certain phone number, which Adams had prearranged with his customers, because he was experiencing technical difficulties with his own system. *Id.* The Court also finds that TracFone has established that, throughout the process, Adams provided proprietary information, such as access codes, that was available only to legitimate TracFone employees. *Id.* at ¶ 13. Additionally, the Court finds that TracFone has established that, by directing the customer service representatives to take certain, specific actions over the telephone, Adams coerced the TracFone representatives into adding the airtime services to those prearranged telephone numbers without any payment to TracFone. *See id.* at ¶ 11.

Further, the Court finds that TracFone has established that Adams was not, and never has been, authorized to take these actions. First Wehling Declaration at ¶¶ 4, 19. The Court also finds that TracFone has established that Adams has acknowledged and admitted that he has never been an agent or employee of TracFone. Adams Declaration at ¶ 14. Additionally, the Court finds that TracFone has established that Adams has also acknowledged and admitted that he was neither authorized to access TracFone's internal systems, nor permitted to sell TracFone products at any time. *Id.* at ¶¶ 14–15. In addition, the Court finds that TracFone has established that Adams has acknowledged and admitted that he intentionally bypassed TracFone's security measures. *Id.* at ¶ 16. The Court further finds that TracFone has established that Adams misled customers about the origins of the airtime he was selling and was well aware that customers were purchasing his fraudulent product instead of buying airtime directly from TracFone. *Id.* at ¶¶ 8, 16; *see* Burgess Declaration at ¶ 2; *see also* Williams Declaration at ¶ 2.

The Court further finds that TracFone has established that, as a result of Adams' conduct, it has suffered damages. The Court finds that TracFone has established that the airtime service at issue is valued between $30 and up to $495. First Wehling Declaration at ¶ 13. The Court further finds that, by tricking TracFone employees into issuing the airtime to Adams' customers without payment to TracFone, TracFone has established that it is deprived of the profit it typically derives from its airtime sales. *Id.* at ¶ 19. The Court further finds that TracFone has established that Adams' conduct has caused confusion and mistake as to the origin of his products, and has led to the loss of goodwill between TracFone and its customers. *See id.* at ¶ 16; *see generally* Burgess Declaration; *see also generally* Williams Declaration.

Finally, the Court finds that TracFone has established that it has incurred substantial financial harm due to Adams' conduct, including, but not limited to, the loss

of airtime sales it would have otherwise profited from, the investigation of Adams' Scheme and bringing the instant action, all of which surpass the amount of $5,000, which is the jurisdictional minimum for claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Second Wehling Declaration at ¶¶ 11–13, 15. With respect to the loss of airtime sales, the Court finds that TracFone has established that it lost at least $48,875, from July 1, 2014 through December 31, 2014. Second Wehling Declaration at ¶ 12. The Court further finds that TracFone has established that it lost at least another $30,000 due to Adams' Scheme for the period between April 1, 2011 and June 30, 2014. *Id.* at ¶ 13. Finally, the Court finds that TracFone has established that it incurred an expense of $920.93 due to hiring a private investigator to combat Adams' Scheme. *Id.* at ¶ 15. In sum, the Court finds that TracFone has established that it incurred losses of approximately $79,795.93.

### CONCLUSIONS OF LAW

### I. *Standard Of Review*

Pursuant to Fed.R.Civ.P. 58(a), except for the exclusive list of orders disposing of certain motions, "[e]very judgment and amended judgment must be set out in a separate document." Furthermore, Rule 58(d) provides that "[a] party may request that judgment be set out in a separate document as required by Rule 58(a)." Fed. R.Civ.P. 58(d).

### II. *Jurisdiction And Venue*

### A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, because TracFone's claims for violations of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030, and its claims for violations of the Lanham Act, Title 15 of the United States Code, arise under federal law, and

the requirements for diversity jurisdiction are satisfied. This Court also has supplemental jurisdiction over TracFone's state law claims pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal claims that they form part of the same case or controversy. *See* 28 U.S.C. § 1367.

 Federal question jurisdiction is established by the allegations contained in the plaintiff's complaint. "A well-pleaded complaint presents a federal question where it 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.' " *Smith v. GTE Corp.,* 236 F.3d 1292, 1310 (11th Cir.2001) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Here, the allegations in TracFone's complaint establish federal jurisdiction. In determining whether it has subject matter jurisdiction, a court may look to extrinsic evidence, such as affidavits and testimony, or in this case, declarations. *See Morrison v. Amway Corp.,* 323 F.3d 920, 924–25 (11th Cir.2003).

 The Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1030 *et seq.,* the Computer Fraud and Abuse Act (the "CFAA"). Claims under the CFAA share certain common elements. In pertinent part, a plaintiff must establish that the defendant (1) knowingly or intentionally accessed a protected computer, which is used in interstate commerce; (2) without authorization; and (3) caused at least $5,000 in damage over a one-year period. *See* 18 U.S.C. § 1030(a)(2); 18 U.S.C. § 1030(a)(5)(C). To establish a claim under § 1030(a)(4) of the CFAA, the plaintiff must demonstrate an additional element-that the defendant accessed the protected

computer knowingly and with intent to defraud. *See* 18 U.S.C. § 1030(a)(4).

TracFone has sufficiently established the requisite elements under each provision of the CFAA. First, Adams has admitted that he accessed TracFone's internal systems knowingly and intentionally. *See* Adams Declaration at ¶¶ 6, 10–12. Further, TracFone's proprietary internal systems are protected computers. The statute defines a protected computer as a computer, "which is used in or affecting interstate or foreign commerce or communication...." 18 U.S.C. § 1030(e)(2)(B). TracFone's internal systems are used in interstate commerce because they comprise a system by which airtime, which is typically pre-purchased by TracFone customers, can be added to any customer's telephone number through the internet. *See* First Wehling Declaration at ¶ 25; Adams Declaration at ¶¶ 10–11.

Adams was "never ... authorized to access TracFone's internal systems." Adams Declaration at ¶¶ 6, 10–12, 14; *see also* First Wehling Declaration at ¶¶ 4, 19. Through its presuit investigation, its meeting with Adams in Chicago, and through the third-party discovery conducted pursuant to the Court's January 21, 2015 Order, TracFone determined that Adams sold thousands of dollars worth of fraudulently obtained TracFone airtime. Second Wehling Declaration at ¶¶ 6–11. Finally, Adams has admitted that he accessed TracFone's system for the sole purpose of coercing TracFone's customer service representatives into issuing free airtime, thus satisfying the additional element of "intent to defraud" under section 1030(a)(4). *See* Adams Declaration at ¶ 11. Based on these facts, this Court has jurisdiction over TracFone's CFAA claims.

■ In addition to violations of the CFAA, this Court has federal question jurisdiction over TracFone's claims pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1114. In order to prevail on a claim of trademark infringement, TracFone must demonstrate that "Defendant (1) used the Trademark in commerce (2) without Plaintiff's consent and (3) the unauthorized use 'was likely to deceive, cause confusion, or result in mistake.'" *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1248 (11th Cir.2002). TracFone has established each element.

■ Adams' admissions satisfy each of the required elements of trademark infringement, thus vesting this Court with jurisdiction over TracFone's claims. First, Adams marketed his fraudulent airtime as if it was identical to the legitimate product sold by TracFone. Adams Declaration at ¶ 8. Adams knew and took advantage of the fact that his customers believed the airtime he sold them was legitimate. *Id.* at ¶¶ 8, 16. Adams has, however, never been authorized to use TracFone's marks. *Id.* at ¶ 15; *see* First Wehling Declaration at ¶¶ 4, 19. Finally, Adams' unlawful activities deceived potential TracFone customers into purchasing his fraudulent product, caused confusion over the origins of Adams' airtime, and resulted in mistake. Adams Declaration at ¶ 8; *see generally* Burgess Declaration and Williams Declaration. Because each element of the statute is satisfied, this Court has jurisdiction over TracFone's Lanham Act claims.

■ In addition to federal question jurisdiction, this Court has diversity jurisdiction over the instant case. A district court has original jurisdiction over all cases between citizens of different states when the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Here, the parties are citizens of different states: Adams is a citizen of the State of Illinois, and TracFone is a citizen of the State of Florida (where it maintains its principle place of business) and Delaware (its state of incor-

poration). The amount in controversy requirement in this matter is satisfied because TracFone incurred approximately $79,795.93 in damages due to Adams' Scheme. Second Wehling Declaration at ¶¶ 12–15. In particular, TracFone lost at least $48,875 in revenue between July 1, 2014 and December 31, 2014, due to Adams' improper sale of TracFone airtime. *Id.* at ¶ 12. Between April 1, 2011 and June 30, 2014, TracFone lost at least $30,000, as a result of Adam's conduct. *Id.* at ¶ 13. Throughout the pendency of Adams' Scheme, TracFone retained a private investigator to investigate and combat Adams' Scheme, which came at a cost of $920.93. *Id.* at ¶ 15. Accordingly, the amount in controversy exceeds the jurisdictional minimum. *See* 28 U.S.C. § 1332.

## B. Personal Jurisdiction

■ This Court has personal jurisdiction over Adams because all TracFone airtime fraudulently acquired and resold by Adams pursuant to his Social Engineering Scheme is purchased by TracFone within Florida, TracFone negotiates and executes all agreements with respect to all prepaid airtime within Florida, and all of the TracFone prepaid airtime is paid for by TracFone within Florida. Second Wehling Declaration at ¶ 4; *Elandia Int'l, Inc. v. Ah Koy,* 690 F.Supp.2d 1317, 1331 (S.D.Fla.2010) (finding that a nonresident's conduct outside the forum state that damaged a corporation, which maintained its principle place of business in Florida, was sufficient to establish personal jurisdiction); *PK Computers, Inc. v. Indep. Travel Agencies of Am., Inc.,* 656 So.2d 254, 255 (Fla. 4th DCA 1995) (recognizing that personal jurisdiction may exist where a defendant's tortious statements were directed at in-state listeners). Further, Adams' actions have caused damage to TracFone within Florida. *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla.2002) ("[T]elephonic, electronic, or written communications into

Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications.").

Adams is further subject to the personal jurisdiction of this Court pursuant to the following Florida statutes: (i) § 48.193(1)(a)(6)(a)—because he has caused injury to persons within Florida arising out of an act or omission by Adams outside of this State while Defendant was engaged in solicitation of service activities within this State; (ii) § 48.193(1)(a)(6)(b)—because Adams has caused injury to persons within this State arising out of an act or omission by Adams outside of this State while products, materials, or things processed or serviced by Adams were used or consumed within this State in the ordinary course of commerce, trade, or use; and (iii) § 48. 193(2)—because Adams has engaged in substantial and not isolated activity within this State. *See Swanky Apps, LLC v. Roony Invest & Fin., S.A.,* 126 So.3d 336, 339 (Fla. 3d DCA 2013) ("[C]ommitting a tortious act within Florida under section 48.193(1)(b) can occur by making telephonic, electronic, or written communications into this State, provided that the tort alleged arises from such communications, and under certain circumstances, such communications can also satisfy due process requirements.") (internal quotation and citations omitted); *Oldock v. DL & B Enterprises, Inc.,* 100 So.3d 50, 53 (Fla. 2d DCA 2011) ("If a nonresident defendant has initiated and maintained continuous and systematic business contacts in Florida for pecuniary gain, this fact is sufficient to establish general jurisdiction as well as to fulfill the due process requirement of minimum contacts."); *Waters Edge Living, LLC v. RSUI Indem. Co.,* No. 4:06cv334–RH/WCS, 2007 WL 1021359, at *3 (N.D.Fla. Mar. 31, 2007) (holding that repeated communications sent into Florida constituted substantial

and not isolated activities in Florida for purposes of personal jurisdiction). Given Adams' Scheme whereby he operated a fraudulent airtime sales business, his repeated communications sent into Florida in order to perpetrate that Scheme, and the damage caused to TracFone, which maintains its principle place of business in Florida, TracFone has demonstrated that this Court may exercise personal jurisdiction over Adams.

## C. Venue

█ Venue is proper pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events and property that are the subject of the action are located within the Southern District of Florida, and the impact of Adams' conduct occurred in this District. See 28 U.S.C. § 1391(a)(b). The Court finds that TracFone has established that the events that gave rise to this suit occurred in this District. First, the Court finds that TracFone has established that Adams called into TracFone's headquarters, which is located in Miami, Florida. The Court further finds that TracFone has established that Adams coerced TracFone employees into accessing and manipulating TracFone's internal and proprietary systems, which are also located in Miami, Florida. Accordingly, this Court, like many others faced with similar schemes perpetrated against TracFone, finds that venue is proper in the Southern District of Florida. See, e.g., TracFone Wireless, Inc. v. Pak China Grp. Co., 843 F.Supp.2d 1284, 1291 (S.D.Fla.2012) ("Venue is proper in this Court ... because a substantial part of the events or omissions giving rise to the claim occurred in this District, the impact of Defendants' conduct occurred in this District, and Defendants are subject to personal jurisdiction in this District."); TracFone Wireless, Inc. v. Bequator Corp., No. 10–cv–21462 (WMH), 2011 WL 1427635, at *3 (S.D.Fla. Apr. 13, 2011)

(same); Capital Corp. Merch. Banking v. Corporate Colocation, Inc., No. 6:07–cv–1626–Orl19KRS, 2008 WL 4058014, at *3 (M.D.Fla. Aug. 27, 2008) ("Capital Corp. alleges that the website was accessed in this District, that it suffered harm to its reputation in this District, and that it suffered an economic injury in this District. As a result, the allegations are sufficient to establish venue . . . .").

Further, as noted above, the property that is the subject of this action is located within this District. See Dixon v. Joeleon Holdings, LLP, No. 12C2449, 2012 WL 1598055, at *3 (N.D.Ill. May 4, 2012) (noting that the venue provisions apply to personal as well as real property). The Court finds that TracFone has established that the property—the airtime that Adams unlawfully and fraudulently sells—is negotiated for and purchased by TracFone within this District. See Safeway Inc. v. CESC Plaza Ltd. P'ship, 261 F.Supp.2d 439, 461 (E.D.Va.2003) (finding venue to be proper because, among other reasons, the property that was the subject of the action was located in the district in which the suit was brought); 2215 Fifth St. Associates v. U Haul Int'l, Inc., 148 F.Supp.2d 50, 57 (D.D.C.2001) (same); see also Strasen v. Strasen, 897 F.Supp. 1179, 1187 (E.D.Wis. 1995) (finding venue to be proper because, among other reasons, the property that was the subject of fraud was located in the district in which the suit was brought). Thus, for this reason, as well as those discussed above, the Court finds that venue is proper in the Southern District of Florida.

## III. Relief

### A. Injunctive Relief is Appropriate

█ The Court finds that TracFone is entitled to entry of a permanent injunction against Adams under the CFAA and Lanham Act. To demonstrate entitlement to

permanent injunctive relief in this Circuit, the movant must demonstrate: (1) success on the merits of its claims; (2) an irreparable injury in which monetary remedies are inadequate; (3) the balance of hardships between the plaintiff and defendant favor injunctive relief; and (4) the public interest would not be disserved by a permanent injunction. *See Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.,* 522 F.3d 1200, 1208 (11th Cir.2008).

■ Permanent injunctive relief is appropriate here. As a preliminary matter, the parties agree to the injunction, and courts routinely enter permanent injunctions based upon the agreement of the parties. *See, e.g., Rovio Entm't, Ltd. v. Angry Clubs LLC,* No. 1:13–Civ–23619, 2013 WL 8743938, at *3 (S.D.Fla. Nov. 25, 2013); *TracFone Wireless, Inc. v. Bitcell Corp.,* No. 07–22249–CIV, 2008 WL 7278921, at *1 (S.D.Fla. May 27, 2008); *Sony BMG Music Entm't v. Lewis,* No. 06–60836–Civ–Cohn, 2007 WL 1176518, at *1 (S.D.Fla. Feb. 23, 2007).

■ Moreover, even if this was not an "agreed injunction," TracFone has established actual success on the merits of its claims. Adams has admitted to his wrongdoing, which TracFone seeks to enjoin. Indeed, Adams stated that "[a]t all times I understood that I was bypassing TracFone's security measures and misleading potential customers about the origins of the airtime." Adams Declaration at ¶ 16. A sworn admission is sufficient to demonstrate success on the merits. *See Revelex Corp. v. World Travel Holdings, Inc.,* No. 07–80002–CV, 2007 WL 42964, at *2 (S.D.Fla. Jan. 4, 2007).

■ Second, the Court finds that TracFone would suffer irreparable harm pursuant to the CFAA and Lanham Act if Adams is not required to halt his illegal activities. TracFone would be irreparably harmed because Adams' actions, if allowed to persist, will continue to cause TracFone to suffer harm by impairing the integrity of TracFone's proprietary computer system and wireless telecommunications network. Further, if not enjoined, Adams' activities would continue to cause confusion amongst consumers as the origin of his fraudulent airtime. Accordingly, the Court finds that the grant of permanent injunctive relief is the only adequate remedy to prevent Adams from continuing to perpetrate his Social Engineering Scheme.

■ Third, the Court finds that the balance of hardships weighs strongly in TracFone's favor. Adams has no legitimate interest in perpetrating the Social Engineering Scheme. Adams has never been a TracFone employee, authorized to access TracFone's protected and proprietary systems, or permitted to sell TracFone products. Simply put, Adams has absolutely no interest whatsoever in continuing his conduct. TracFone, however, is threatened with irreparable injury if a permanent injunction is not issued. The continued perpetration of the Social Engineering Scheme poses a substantial threat to TracFone's business and substantially damages TracFone on a continuous basis. Under the circumstances presented here, the Court finds that a permanent injunction "will merely enjoin [Defendant] from conducting a business which is already prohibited by state and federal law." *MediaOne of Delaware, Inc. v. E & A Beepers & Cellulars,* 43 F.Supp.2d 1348, 1354 (S.D.Fla.1998).

Fourth, and finally, the Court finds that the public interest is advanced by enforcing faithful compliance with the laws of the United States and the State of Florida. There is no public interest in Adams' perpetration of the Scheme to unlawfully obtain and sell TracFone airtime. Accordingly, the Court finds that the public interest will be served by issuing the requested injunctive relief.

For these reasons, the Court shall enter a permanent injunction against Adams and in favor of TracFone as more fully set forth below.

### B. Judgment Against Defendant and in Favor of TracFone Is Appropriate On All Counts.

### 1. TracFone Has Established That It Is Entitled To Final Judgment On Each Count Alleged.

#### a. Federal Trademark Infringement

■ In count one of its Complaint, TracFone asserted a claim against Adams for federal trademark infringement in violation of 15 U.S.C. § 1114. In order to prevail on a claim of trademark infringement, TracFone must demonstrate that "1) that its mark is valid (i.e., properly registered, not generic, not abandoned through non-use); and 2) that the defendant's use of the contested mark is likely to cause deception or confusion on part of the consuming public as to the source of goods or services at issue." *Fila U.S.A., Inc. v. Kim,* 884 F.Supp. 491, 494 (S.D.Fla.1995). TracFone has established each element.

■ The Court finds that judgment on this claim in TracFone's favor is appropriate because each of the required elements has been established. First, Adams marketed his fraudulent airtime as if it was identical to the legitimate product sold by TracFone. Adams Declaration at ¶ 8. Adams knew and took advantage of the fact that his customers believed the airtime he sold them was legitimate. *Id.* at ¶¶ 8, 16. Finally, Adams has never been authorized to use TracFone's marks. *Id.* at ¶ 15. Thus, the first element of the cause of action is satisfied.

■ The Court finds that Adams' use of TracFone's marks caused confusion. The Eleventh Circuit analyzes seven factors to determine if confusion exists: "(1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media, (6) defendant's intent, and (7) actual confusion. Of the seven factors, the type of mark and the evidence of actual confusion are the most important." *ITT Corp. v. Xylem Group, LLC,* 963 F.Supp.2d 1309, 1319 (N.D.Ga.2013). Adams' unlawful activities deceived potential TracFone customers into purchasing his fraudulent product. Specifically, the Court finds that customers were confused over the origin of the airtime, which those customers mistook for a legitimate TracFone product. *Id.* at ¶ 8, and *see generally* Burgess Declaration; *see also generally,* Williams Declaration. Because each element of the statute is satisfied, the Court finds that TracFone is entitled to judgment in its favor and against Adams on count one of TracFone's complaint for federal trademark infringement.

#### b. Federal Unfair Competition and False Advertising

■ In count two of the complaint, TracFone alleged that Adams committed unfair competition and false advertising in violation of 15 U.S.C. § 1125(a)(1)(A) and (B). To prevail on a claim for federal unfair competition, a "plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 647 (11th Cir.2007) (internal quotations omitted). To succeed on a claim for false advertising a plaintiff must bring forth evidence of five elements: (1) the defendant made false or misleading statements about his product in an advertisement; (2) those advertisements actually deceived consumers or have the tendency to deceive a substantial portion of the

targeted audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) the defendant's advertised product traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading advertisements by causally related declining sales or loss of goodwill. *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 915 F.Supp. 360, 364 (S.D.Fla.1996), *aff'd sub nom., Tire Kingdom v. Morgan Tire & Auto,* 136 F.3d 139 (11th Cir.1998).

▮ The Court finds that TracFone has enforceable rights in the trademarks used by Adams. TracFone owns all right, title, and interest in and to United States Trademark Registration No. 2,114,692, issued on November 18, 1997, and based on a first-use date of June 30, 1996; United States Trademark Registration No. 3,794,-491, issued on May 25, 2010, and based on a first-use date of June 1, 2009; United States Trademark Registration No. 3,788,-435, issued on May 11, 2010, and based on a first-use date of June 1, 2009; United States Trademark Registration No. 3,788,-436, issued on May 11, 2010, and based on a first-use date of June 1, 2009; United States Trademark Registration No. 3,794,-595, issued on May 25, 2010, and based on a first-use date of June 1, 2009; United States Trademark Registration No. 3,791,-253, issued on May 18, 2010, and based on a first-use date of June 1, 2009; and United States Trademark Registration No. 2,786,917, issued on November 25, 2003, and based on a first-use date of March 1999 (the "TracFone Marks"). First Wehling Declaration at ¶ 17. The TracFone Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with TracFone. *Id.* Two of the TracFone Marks, which are registered under Registration Nos. 2,114,692 and 2,786,917, are incontestable. *Id.; TracFone Wireless, Inc. v. Pak China Grp. Co.,* 843 F.Supp.2d 1284, 1290 at n. 1 (S.D.Fla.2012) (finding that TracFone Mark with Registration No. 2,114,692 is incontestable). Further, the Court finds that Adams has never been authorized to use the TracFone Marks, and he used them in such a way so as to engender confusion amongst consumers. Adams Declaration at ¶¶ 8, 15; *see generally,* Burgess Declaration; *see also generally* Williams Declaration.

▮ TracFone alleged that Adams committed false advertising under the Lanham Act. TracFone has established each of these elements. The Court finds that, because Adams misled customers into thinking that they were purchasing legitimate TracFone airtime, the first element of the statute is satisfied. Adams Declaration at ¶ 8 ("Those who purchased the airtime from me were under the belief that I was selling legitimate TracFone airtime."). TracFone's investigations into Adams' conduct revealed that his customers were actually deceived by his conduct. *See* Burgess Declaration at ¶¶ 2–3; *see also* Williams Declaration at ¶ 2. The Court finds that Adams' deception was material because it induced unwitting customers to buy his fraudulent airtime instead of the legitimate TracFone product. Adams Declaration at ¶ 8; *see* Burgess Declaration at ¶¶ 2–3; *see also* Williams Declaration at ¶ 2. The airtime is applied to customers' phones through the telephone and over the internet, thus the Court finds that it travelled in interstate commerce. Adams Declaration at ¶¶ 10–11; *see also Vignoli v. Clifton Apartments, Inc.,* 930 F.Supp.2d 1342, 1346 (S.D.Fla. 2013) (allegation that the defendant used the internet or the telephone is sufficient to allege that defendant engaged in interstate commerce). Finally, the Court finds that TracFone has been injured by Adams' conduct because it lost out on sales that it would normally have made, and was forced

to incur costs associated with preventing Adams' future misconduct and in pursuing this action, such as hiring a private investigator. First Wehling Declaration at ¶¶ 25–30; Second Wehling Declaration at ¶¶ 12–15. Accordingly, TracFone is entitled to judgment on its behalf on count two of its Complaint.

### c. Tortious Interference with a Contractual Right

■ In count three of its complaint, TracFone asserted a claim against Adams for tortious interference with a contractual right. To prevail on a claim for tortious interference with a contractual right, TracFone must demonstrate the following elements: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So.2d 381 (Fla. 4th DCA 1999).

■ TracFone has alleged and established each element. First, the Court finds that TracFone has a business relationship with its customers, who purchase subsidized TracFone telephones and activate those phones for use on TracFone's networking by purchasing airtime. First Wehling Declaration at ¶¶ 18–19. The Court finds that Adams knew of this relationship and was well aware that his conduct deprived TracFone of revenues from airtime sales. Adams Declaration at ¶ 8 ("I sold the airtime for a price that was far below that which could be found in stores and I understood that people were purchasing my airtime instead of airtime that was being sold directly by TracFone."). The Court finds that TracFone was damaged by Adams' conduct financially be-

cause it lost out on airtime sales that it ordinarily would have benefited from, as well as through the loss of goodwill of other TracFone customers. *See generally* First Wehling Declaration at ¶¶ 25–30. Because each element of the claim is satisfied, judgment is due to be entered in TracFone's favor.

### d. Unjust Enrichment

■ In Count Four of the complaint, TracFone sued Adams for unjust enrichment. To succeed in a suit for unjust enrichment TracFone must demonstrate that: "(1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Tooltrend, Inc. v. CMT Utensili, SRL,* 198 F.3d 802, 805 (11th Cir.1999).

■ The Court finds that TracFone has established each element of its claim for unjust enrichment. Adams knew that TracFone conferred a benefit upon him because he understood that he was defrauding TracFone into issuing airtime for which he, and not TracFone, received payment. Adams Declaration at ¶¶ 6–7. Further, Adams voluntarily accepted the benefit because he chose to perpetrate his Scheme. *See generally Id.* Finally, it would be inequitable to allow Adams to retain the benefits he obtained as fruits of his fraudulent Scheme, because he was never authorized to engage in the Scheme, which violated state and federal laws. Accordingly, TracFone is entitled to final judgment in its favor on count four of its Complaint.

### e. Common Law Fraud

■ TracFone asserted a claim for common law fraud against Adams in count

five of its Complaint. "The essential elements of common-law fraud are: (1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person." *Gandy v. Trans World Computer Tech. Grp.*, 787 So.2d 116, 118 (Fla. 2d DCA 2001).

■ For the reasons discussed above, the Court finds that TracFone has established the elements of this claim. By Adams' own admission, he knowingly made false statements to TracFone employees in order to coerce them into adding free airtime to prearranged phone numbers. Adams Declaration at ¶¶ 10–11. TracFone's employees acted upon Adams' false statements and added free airtime minutes to certain phone numbers, which resulted in a financial loss to TracFone. First Wehling Declaration at ¶ 25; Second Wehling Declaration at ¶¶ 12–15. As such, with respect to count five of its Complaint, judgment is due to be entered in TracFone's favor on this claim.

### f. Conversion

■ TracFone asserted a claim for conversion against Adams. "[C]onversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession." *City of Cars, Inc. v. Simms*, 526 So.2d 119, 120 (Fla. 5th DCA). By committing the Social Engineering Scheme as described above, the Court find that Adams deprived TracFone of possession over its airtime without authorization. The Court thus finds that Adams committed conversion under Florida law and judgment is due to be entered in TracFone's favor on this claim.

### g. Unfair Competition and Deceptive Trade Practices

■ TracFone asserted a claim against Adams for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See* Fla. Stat. § 501.24. A FDUTPA claim requires TracFone to establish three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Gavron v. Weather Shield Mfg., Inc.*, 819 F.Supp.2d 1297, 1301 (S.D.Fla.2011). "Engaging in trademark infringement is an unfair and deceptive trade practice that constitutes a violation of [FDUTPA.]" *Sun Protection Factory, Inc. v. Tender Corp.*, No. 6:04CV732–ORL–19KRS, 2005 WL 2484710, at *13 (M.D.Fla. Oct. 7, 2005) (internal quotation marks omitted). As described above, the Court finds that TracFone has demonstrated that Adams engaged in trademark infringement by perpetrating his Scheme. Accordingly, TracFone has prevailed on its FDUTPA claim and judgment is due to be entered in TracFone's favor on this claim.

### h. Unauthorized Access to a Protected Computer With Intent to Defraud

■ TracFone must demonstrate the following elements to establish a cause of action under § 1030(a)(4) of the CFAA: "(1) [Defendant] accessed a protected computer; (2) [Defendant] accessed [TracFone]'s computer without authorization or by exceeding authorized access; (3) [Defendant] did so knowingly and with intent to defraud; and (4) [Defendant]'s access furthered the intended fraud and obtained anything of value." *NCMIC Fin. Corp. v. Artino*, 638 F.Supp.2d 1042, 1061–62 (S.D.Iowa 2009).

■ The Court find that TracFone has established the required elements under § 1030(a)(4) of the CFAA. First, the Court find that TracFone's proprietary internal systems are protected computers. The

statute defines a protected computer as a computer, "which is used in· or affecting interstate or foreign commerce or communication...." 18 U.S.C. § 1030(e)(2)(B). TracFone's computers are used in interstate commerce because they comprise a system by which airtime, which is typically pre-purchased by TracFone customers, can be added to any customer's telephone number through the internet. *See* First Wehling Declaration at ¶ 25; Adams Declaration at ¶¶ 10–11. Further, Defendant has admitted that he was "never ... authorized to access TracFone's internal systems" and that he did so with the intent to defraud TracFone. *See* Adams Declaration at ¶¶ 6, 10–12, 14. Finally, through discovery conducted pursuant to this Court's January 21, 2015 Order, TracFone's presuit investigation, and TracFone's meeting with Adams, TracFone determined that Adams sold thousands of dollars worth of fraudulently obtained TracFone airtime. Second Wehling Declaration at ¶¶ 6–11. Accordingly, the Court find that TracFone has established each of the requisite elements of § 1030(a)(4) and judgment is ·due to be entered in TracFone's favor on this claim.

### i. Theft of Computer Data

In order to establish a claim under § 1030(a)(2) of the CFAA, TracFone must demonstrate three elements: (1) the defendant's conduct involved interstate or foreign communication; (2) the defendant used a "protected computer" in that it was used for interstate or foreign communication; and (3) the defendant used TracFone's computer to obtain information without authorization or exceeded his authorized access. *See NCMIC Fin. Corp.*, 638 F.Supp.2d at 1059–60. TracFone has established each of these elements.

First, the Court find that Adams' conduct involved interstate communication. "Both intrastate and interstate telephone communications are part of an aggregate telephonic system" and the use of the phone system necessarily constitutes an interstate communication. *See United States v. Corum*, 362 F.3d 489, 493 (8th Cir.2004). As such, by using the telephone to contact TracFone's call center and gain access to TracFone's system, the Court find that Adams made an interstate communication. *See Id.* Further, as noted above, TracFone's computers are "protected" under the CFAA inasmuch as they were used to apply pre-purchased airtime to customers' phone numbers through the internet. *See* First Wehling Declaration at ¶ 25; Adams Declaration at ¶¶ 10–11. Finally, Adams admitted that he was never authorized to access TracFone's internal systems, satisfying the final element of the statute. Adams Declaration at ¶ 14. Accordingly, the Court find that TracFone has established its claim under § 1030(a)(2) of the CFAA, and judgment is due to be entered in TracFone's favor on this claim.

### j. Unauthorized Access to a Protected Computer

To establish civil liability under § 1030(a)(5)(C) of the CFAA, TracFone must demonstrate that the defendant accessed a protected computer without authorization or exceeded his authorized access, "causing 'loss to 1 or more persons during any 1–year period ... aggregating at least $5,000 in value.' " *Trademotion, LLC v. Marketcliq, Inc.*, 857 F.Supp.2d 1285, 1290 (M.D.Fla.2012) (quoting 18 U.S.C. § 1030(c)(4)(A)(i)(I)). Just as discussed above, the Court ·finds that TracFone has established each requirement.

Like the other relevant provisions of the CFAA, section 1030(a)(5)(C) requires knowing or intentional access to a protected computer without authorization.

*See* 18 U.S.C. § 1030(a)(4); 18 U.S.C. § 1030(a)(2)(C); 18 U.S.C. § 1030(a)(5)(C). Adams has admitted that he intentionally accessed TracFone's internal systems. *See* Adams Declaration at ¶¶ 6, 10–12. Adams has similarly admitted that he was not authorized to access those systems. *Id.* at ¶ 14 ("I was not, and never have been, an employee of TracFone and I have never been authorized to access TracFone's internal systems."). Adams further admitted that he perpetrated his Scheme for longer than one year, "from about April 2011 through November 2014." *Id.* at ¶ 6. TracFone's analysis of records obtained pursuant to this Court's Order allowing for expedited discovery, the meeting between TracFone and Adams in Chicago at which Adams provided information regarding his Scheme, as well as TracFone's presuit investigations, has revealed that Adams caused more than $5,000 in losses over a one-year period. *See* Second Wehling Declaration at ¶¶ 6–11.

### 2. TracFone Has Established That It Is Entitled To A Money Judgment

▮ In addition to the thousands of dollars in losses incurred due to Adams' airtime theft, the Court finds that TracFone is entitled to consequential damages under the CFAA. "Loss is defined in the CFAA as any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Cont'l Grp., Inc. v. KW Prop. Mgmt., LLC*, 622 F.Supp.2d 1357, 1370 (S.D.Fla.2009) (internal quotations omitted). Courts have allowed "loss of business and business goodwill as 'economic damages' under the CFAA." *Cohen v.*

*Gulfstream Training Acad., Inc.*, No. 07–60331–CIV, 2008 WL 222688, at *2 (S.D.Fla. Jan. 25, 2008) (citing *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir.2004)).

Further, a party's subsequent investigation of a violation of the CFAA is considered to fall within the statute's definition of economic damages. Several federal courts—both in Florida and in other districts—have confirmed that the term "loss" under the CFAA includes losses incurred in the form of "costs to investigate and respond to a computer intrusion." *Trademotion, LLC v. Marketcliq, Inc.*, 857 F.Supp.2d 1285, 1293 (M.D.Fla.2012) (quoting *Quantlab Techs. Ltd. v. Godlevsky*, 719 F.Supp.2d 766, 776 (S.D.Tex. 2010)); *Cheney v. IPD Analytics, LLC*, No. 08–23188–CIV, 2009 WL 3806171, at *7 (S.D.Fla. Aug. 28, 2009) ("Courts have consistently interpreted 'loss' to mean a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted.") (quoting *Frees, Inc. v. McMillian*, No. 05–1979, 2007 WL 2264457, at *3 (W.D.La. Aug. 6, 2007)); *Modis, Inc. v. Bardelli*, 531 F.Supp.2d 314, 320 (D.Conn.2008) (noting that "the costs of responding to the offense are recoverable" including "costs to investigate and take remedial steps.").

Here, the Court finds that TracFone incurred $79,795.93 in damage as a direct result of Adams' Scheme, including its subsequent actions taken to investigate and combat Adams' conduct. First, TracFone dedicated the time and energy of certain employees to analyzing Adams' Scheme and to determine how he compromised the integrity of TracFone's systems. Second Wehling Declaration at ¶ 14. In addition, TracFone retained a private investigator to further discern Adams' illicit methods and assess the nature and extent of the damage he caused, which came at a cost of

$920.93. *Id.* Given these expenses, combined with Adams' $48,875 in stolen airtime between July 1, 2014 and December 31, 2014, and his additional $30,000 in stolen airtime between April 1, 2011 and June 30, 2014, the Court finds that TracFone is entitled to the entry of final judgment in the amount of $79,795.93. Second Wehling Declaration at ¶¶ 12–15; *see also* 28 U.S.C. § 1332. Accordingly, entry of a final judgment in the amount of $79,795.93 is appropriate in this case.

## RELIEF

Accordingly, for the foregoing reasons, it is hereby **ORDERED** and **ADJUDGED** that Plaintiff's Agreed Motion for Entry of Final Judgment and Permanent Injunction Against Defendant Dustin L. Adams is **GRANTED.** The Court hereby **ORDERS** that:

1. This Court has jurisdiction over all the parties and all of the claims set forth in TracFone's complaint.

2. The Court finds that TracFone owns all right, title, and interest in and to United States Trademark Registration No. 2,114,692, issued on November 18, 1997, and based on a first-use date of June 30, 1996; United States Trademark Registration No. 3,794,491, issued on May 25, 2010, and based on a first-use date of June 1, 2009; United States Trademark Registration No. 3,788,435, issued on May 11, 2010, and based on a first-use date of June 1, 2009; United States Trademark Registration No. 3,788,436, issued on May 11, 2010, and based on a first-use date of June 1, 2009; United States Trademark Registration No. 3,794,595, issued on May 25, 2010, and based on a first-use date of June 1, 2009; United States Trademark Registration No. 3,791,253, issued on May 18, 2010, and based on a first-use date of June 1, 2009; and United States Trademark Registration No. 2,786,917, issued on November 25, 2003, and based on a first-use date

of March 1999 (collectively the "TracFone Marks").

3. The TracFone Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with TracFone. The Court finds that the trademark registered under Registration Nos. 2,114,692 and 2,786,917 are incontestable.

4. The Court finds that the Adams's Social Engineering Scheme constitutes federal trademark infringement under 15 U.S.C. § 1114; federal unfair competition under 15 U.S.C. § 1125(a); tortious interference with contract; unjust enrichment; common law fraud; conversion; unfair competition and false advertising under the § 501.204, Florida Statutes; unauthorized access to a protected computer under 18 U.S.C. § 1030(a)(4); theft of computer data under 18 U.S.C. § 1030(a)(2)(C); and unauthorized access to a protected computer under 18 U.S.C. § 1030(a)(5)(C).

5. The Court further finds that Adams's Social Engineering Scheme has caused substantial and irreparable harm to TracFone, and will continue to cause substantial and irreparable harm to TracFone unless enjoined.

6. TracFone is entitled to injunctive relief and damages on the claims set forth in the Complaint.

7. Final judgment is hereby entered against Defendant Dustin L. Adams, and in favor of the Plaintiff TracFone Wireless, Inc., on all of the claims set forth in TracFone's complaint, in the principal amount of $79,795.93, for which let execution issue, and which shall bear interest at the legal rate.

8. Adams, and each of his heirs, successors, assigns, personal representatives, beneficiaries, relatives, agents, employees, attorneys, accountants, investigators, consultants, and all other persons or entities

acting or purporting to act for him or on his behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with Adams who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

a. calling any of TracFone's call centers in an attempt to pose as a corporate representative of TracFone for the purpose of adding TracFone Service to any TracFone accounts on any of TracFone's brands, including the spiracle logo,

Net10, Straight Talk, Simple Mobile, SafeLink, Page Plus, and TelCel America; attempting to sell TracFone Service on any of TracFone's brands, including the spiracle logo,

Net10, Straight Talk, Simple Mobile, SafeLink, Page Plus, and TelCel America;

b. attempting to sell TracFone Service on any of TracFone's brands, including the spiracle logo,

Net10, Straight Talk, Simple Mobile, SafeLink, Page Plus, and TelCel America, outside of brick-and-mortar stores that sell the same;

c. facilitating or in any way assisting other persons or entities who Adams knows or should know are engaged in a scheme to fraudulently acquire TracFone Services on any of TracFone's brands, including the spiracle logo,

Net10, Straight Talk, Simple Mobile, SafeLink, Page Plus, and TelCel America, on behalf of themselves or others;

d. facilitating or in any way assisting other persons or entities who Adams knows or should know are engaged in any of the acts prohibited under this permanent injunction including, without limitation, the attempted sale of TracFone services on any of TracFone's brands, including the spiracle logo,

Net10, Straight Talk, Simple Mobile, SafeLink, Page Plus, and TelCel America;

e. knowingly using the TracFone Marks or any other trademark that Adams knows or reasonably should know are owned or used by TracFone, including the spiracle logo,

Net10, Straight Talk, Simple Mobile, SafeLink, Page Plus, and TelCel America, or that is likely to cause confusion with TracFone's Marks, without TracFone's prior written authorization.

9. The Court is issuing this permanent injunction because Adams has caused thousands of dollars of irreparable harm to TracFone, including, but not limited to, loss of goodwill with the legitimate customers of TracFone and any of TracFone's brands as a result of having purchased TracFone Services through Adams, dilution and diminution of TracFone's Marks relating to TracFone or any of TracFone's brands, and expenses incurred in relation to Adams's Social Engineering Scheme,

including, but not limited to, investigating the Scheme, prosecuting the Scheme, and undertaking customer service efforts to mitigate the dilution and diminution of TracFone's brand as a result of Adams's Social Engineering Scheme. The Court finds that these costs are substantial, permanent, and would only grow if Adams was allowed to continue to perpetrate his Social Engineering Scheme.

10. The last known address of Defendant Dustin L. Adams, is 24 E. 100th Pl., Apartment 2, Chicago, Illinois 60628.

11. The address of Plaintiff TracFone Wireless, Inc., is 9700 N.W. 112th Avenue, Miami, Florida 33178.

12. The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction by a finding of contempt. If, if any time, the Court find Adams in contempt for violation of the Permanent Injunction, TracFone may, at its discretion, reopen this case and seek the appropriate damages.

13. The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

14. The clerk of Court is directed to close this case.